UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL BARBACANO,<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>VINCENT GUARINI, WARDEN<br>County of Lancaster Prison, in his<br>official and individual capacity;<br>625 E. King St.<br>Lancaster, PA  17602-3199<br><br>CORRECTIONS OFFICER<br>VILLEREL, in his official and<br>individual capacity;<br>County of Lancaster Prison<br>625 E. King St.<br>Lancaster, PA  17602-3199<br><br>CORRECTIONS OFFICER RILEY, in<br>his official and individual capacity;<br>County of Lancaster Prison<br>625 E. King St.<br>Lancaster, PA  17602-3199<br><br>CORRECTIONS OFFICER WOLFE,<br>in his official and individual<br>capacity,<br>County of Lancaster Prison<br>625 E. King St.<br>Lancaster, PA  17602-3199<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO.<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ JURY TRIAL DEMANDED<br>§<br>§<br>§<br>§<br>§<br>§ |

**COMPLAINT**

Plaintiff, Paul Barbacano, through his attorney, brings this complaint against Lancaster County Prison, its employees and agents, alleging the following:

**I.    Introduction**

1) Lancaster County Prison has implemented policies and acquiesced to a culture of violence in its prison that led to the brutal beating of Plaintiff. Lancaster County Prison has a history of allowing prisoner abuse and has fostered a culture of ongoing unconstitutional abuse. *See e.g. Eichelman v. Lancaster County*, 510 F. Supp. 2d 377 (E.D.Pa. 2007) (Prison officials encouraged and allowed inmates to beat another inmate) and *Nieves v. Lancaster County*, 04-cv-4452 (E.D.Pa.)  It is a fundamental principle in an ordered society that prisons have a duty to humanly treat those under their custody and control.  From basic human rights to specific applications of the Fourth Amendment and Due Process liberty interests, human dignity and constitutional rights are violated when any government institution participates in senseless abuse.

2) The purpose of a just prison system should never be to degrade or cruelly and inhumanely punish criminals.  Any prison that condones and allows prisoners to be abused is failing its duty to society and decreasing the chances of rehabilitation.  When prisoners experience such lawless treatment from the hands of the government, it is unlikely that they will

be inspired to obey the law when they are released. This action, therefore seeks to change the culture of abuse at Lancaster County Prison through 1) a declaratory judgment that Plaintiff's constitutional rights were violated, 2) nominal and compensatory damages; 3) punitive damages against defendants in their individual capacities; and, 4) attorneys' fees.

## II.  JURISDICTION

3) The court has jurisdiction of Plaintiff's Fourth and Fourteenth Amendment claims pursuant to 28 U.S.C. §1331, § 1343 and 42 U.S.C. § 1983; Plaintiff's declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.; and, Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.  VENUE

4) Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' actions arose within the boundaries of the United States District Court for the Eastern District of Pennsylvania.

## IV.  THE PARTIES

### A.  Plaintiff

5) Paul Barbacano, is an adult citizen and resident of Pennsylvania residing in the City of Lancaster, Lancaster County, Pennsylvania.

### B.  Defendants

6) Vincent Guarini was the Warden of Lancaster County Prison, being responsible for safe-keeping all inmates incarcerated in Lancaster

County Prison. Defendant Guarini has a duty to provide for adequate training and supervision of prison staff and make sure that all policies and procedures are followed. Defendant Guarini at all times relevant to this complaint acted under the color of state law and within the scope of his employment. Defendant Guarini is being sued both individually and in his official capacity as an officer, agent, and employee of Lancaster County.

7) Correctional Officer Villerel is an employee of Defendant Lancaster County, serving as a correctional officer at the Lancaster County Prison. At all times material Defendant Villerel acted under color of state law and within the scope of his employment. Defendant Villerel is being sued individually and in his official capacity as an officer, agent, and employee of Lancaster County.

8) Correctional Officer Riley is an employee of Defendant Lancaster County, serving as a correctional officer at the Lancaster County Prison. At all times material, Defendant Riley acted under color of state law and within the scope of his employment. Defendant Riley is being sued individually and in his official capacity as an officer, agent, and employee of Lancaster County.

9) Correctional Officer Wolfe, is an employee of Defendant Lancaster County, serving as a correctional officer at the Lancaster County Prison. At all times material Defendant Wolfe acted under color of state law and within the scope of his employment. Defendant Wolfe is being sued

individually and in his official capacity as an officer, agent, and employee of Lancaster County.

10) At all times alleged herein, defendants were acting under color of state law.

## V. STATEMENT OF RELEVANT FACTS

11) For years, the Lancaster County Prison has fostered an environment and culture of abuse. Guards known as "gunslingers" routinely beat and abuse prisoners without control, accountability or discipline from supervisors. Guards who speak up against such abuse are marginalized into silence.

12) On September 20, 2007, Mr. Barbacano was arrested on an outstanding 2004 Driving Under the Influence warrant and held in Lancaster County Prison pending trial.[1]

13) Mr. Barbacano was assigned to block G-2 with cellmate Gordon Leschke.

14) On or about November 12, 2007, at approximately 4:00 p.m., Mr. Barbacano became engaged in an argument with his cellmate after Leschke defecated on the wall in their cell. Mr. Barbacano and Leschke argued, but no physical contact or violence occurred between them.

15) Defendant Villerel came to the cell at Mr. Barbacano's request. Villerel opened the cell door and put handcuffs on Mr. Barbacano. As Mr. Barbacano was removed from the cell, Villerel yelled at Mr. Barbacano to "stop resisting."

---

[1] According to the Lancaster County Court of Common Pleas Docket Sheet in his case, Mr. Barbacano was sentenced on March 3, 2008 to 4 to 23 months and 1 year probation.

16) Mr. Barbacano loudly proclaimed that he was not resisting in order that the other prisoners would see that Defendant Villerel was mistreating him.

17) Leschke, and other prisoners, witnessed Defendant Villerel slam Mr. Barbacano's head down onto the top of the guard's desk several times despite the fact that Mr. Barbacano was handcuffed and offered no resistance.

18) Despite never observing any physical contact between Leschke and Barbacano, defendant Villerel told Defendants Riley and Wolfe that Mr. Barbacano "likes to beat up on old men" (an apparent reference to his cellmate Leschke).

19) While forcing Mr. Barbacano out of the cell block, Defendants Riley and Wolfe attempted to open the door between block G-2 and the hallway by slamming Mr. Barbacano's head into the door at least four times. To mask their cruel torture of Mr. Barbacano, defendants accused Mr. Barbacano of resisting, while Mr. Barbacano continued to loudly insist that he was not resisting.

20) Defendants Riley and Wolfe were so rough with Mr. Barbacano that his shoes were knocked off. He asked for them back, but Defendants said, "you won't need them where you're going."

21) While Mr. Barbacano was escorted down the hallway, Defendants Riley and Wolfe repeatedly banged his head into the wall and continued to falsely accuse Mr. Barbacano of resisting.

22) Defendants Riley and Wolf then took Mr. Barbacano into the elevator where they again slammed Mr. Barbacano's head into the doors.

23) Once in the elevator, Defendant Riley accused Mr. Barbacano of assaulting Defendant Wolffe and Defendant Wolffe accused Mr. Barbacano of assaulting Defendant Riley. In retaliation for the alleged "abuse" they pummeled Mr. Barbacano with closed-fist punches to his head.

24) Mr. Barbacano has no memory of being taken from the elevator to solitary confinement and believes that he blacked-out from the first round of beatings.

25) In solitary confinement, Mr. Barbacano was stripped naked and handcuffed behind his back. An officer put his knee in Mr. Barbacano back to hold him still while Defendant Riley punched Mr. Barbacano approximately fifteen to twenty times in the face. As Riley beat Mr. Barbacano, Mr. Barbacano began pleading for mercy, which caused Riley to beat him all the more.

26) Mr. Barbacano was then stood up and someone removed his handcuffs while Defendant Riley attempted to provoke Mr. Barbacano into hitting him. Defendant Riley stated, "This is the part I love, go ahead and hit me."

27) Mr. Barbacano, who had never resisted, dazedly mumbled "what are you doing?" and refused to be provoked by Defendant Riley.

28) Mr. Barbacano was taken back to "the hole" Phase I, where other inmates told Mr. Barbacano to have a white shirt (supervisor) take him to medical for treatment because he was badly beaten. Mr. Barbacano was taken to medical and received an ice pack, but medical staff refused to document his injuries with pictures.

29) Defendant Villerel reported Mr. Barbacano for assaulting an inmate and creating a disturbance.

30) At Mr. Barbacano's "hearing" on Villerel's charges before a supervisor ("white shirt"), Mr. Barbacano admitted that he was loudly proclaiming that he was not resisting but denied ever assaulting his cellmate.

31) Mr. Barbacano was found guilty of creating a disturbance because he admitted that he made noise in an attempt to make sure that witnesses were watching the abuse that he received in G-2.

32) The supervisor found that Mr. Barbacano did not assault Mr. Leshke.

**VI.   CAUSES OF ACTION**

**Count I**
**Deliberate Indifference To Plaintiff's Fourth Amendment Rights**
**(42 U.S.C. § 1983) – Beating prisoner and inflicting wanton and unnecessary pain.**

33) Plaintiff incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

34) Individuals awaiting trial do not forfeit their rights to be treated humanely just because they are detained. The Fourth Amendment specifically protects detainees from cruel and unusual punishment

35) Defendant Correctional Officers violated Mr. Barbacano's Fourth Amendment Rights that are designed to uphold the dignity of man, which was violated by punitive treatment that inflicted "wanton and unnecessary" pain. *Hope v. Pelzer,* 536 U.S. 730, 737-38 (2002).

36) The beating described above was both: "(1) a sufficiently serious constitutional deprivation; and (2) deliberate indifference by the prison official-defendants." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 130 (3rd Cir. 2001).

37) Being stripped naked and beaten unconscious with hits and punches to the head is the type of wanton and unnecessary pain that constitutes a serious deprivation of Mr. Barbacano's rights.

38) Defendant Correctional Officers were state actors that purposely beat Mr. Barbacano, passing the standard of mere deliberate indifference.

39) It was "'sufficiently clear that a reasonable official would understand that what he is doing violates'" the right to be free from excessive force and cruel and unusual punishment so the Defendant Officers are not entitled to qualified immunity under § 1983 because a beating is a clear violation of Mr. Barbacano's Fourth Amendment rights.

40) The Lancaster County Prison maintains a pattern and practice of unjustified, unreasonable and illegal force.

WHEREFORE, plaintiff demands judgment against defendants as set forth in his prayer for relief.

## Count II
### Policy, Custom, and Practice (42 U.S.C. § 1983) – Having Policies, Customs, and Practices That Lead to Prisoner Abuse

41) Plaintiff incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

42) A number of correction officers at Lancaster County Prison engage in unprovoked or verbally provoked malicious and sadistic abuse of prisoners. The Fourth Amendment allows that corrections officers may use the degree of force necessary to a good faith effort to restore discipline. However, a verbal statement by a prisoner is never grounds for physical force by a guard and evidences a lack of adequate training. Likewise, prisoner refusal to eat prison food is not constitutionally permissible grounds for the use of physical force upon a prisoner. Despite these well and long-established principles, inmates are routinely hit, tasered and beaten for verbal comments and refusal to consume food.

43) Lancaster County Prison maintains a policy, custom and practice of guard abuse of prisoners. This policy of abuse is an actionable 'custom' as it is so long-standing and well-settled that it can be said to virtually constitute law.

44) The custom or practice of prisoner beatings "may be established by proof of knowledge or acquiescence" *Eichleman*, 510 F. Supp. 2d at 395.

45) Policies for which the County and the Warden are responsible that acquiesced to the culture of violence inside Lancaster County Prison include, *inter alia*:

   a) Having a custom, policy, and practice of failing to properly train and supervise Correctional Officers, allowing Officers to use wanton and unnecessary force on prisoners.

   b) Failure to discipline correction officers who abuse prisoners.

   c) Failure to have any system by which correction officers who abuse guards are identified and held accountable for their conduct.

   d) Having a custom, policy, and practice of downplaying the degree of force used by Correctional Officers against prisoners (*See Eichelman,* where prison medical staff briefly treated Eichelman who after his release was actually hospitalized from injuries received while in prison. *Eichelman,* 510 F. Supp. 2d at 385.

46) It is believed and therefore averred that a group of Corrections Officers, including Defendants, have made abusing inmates "a well-settled practice" at Lancaster County Prison, creating a custom and policy to which the County and its policymaker, Warden Guarini, acquiesced. *Eichelman,* 510 F. Supp. 2d at 397.

47) Warden Guarini is also liable as a deliberately indifferent supervisor under the test applied in *Eichelman* and *Beers-Capitol*: "[A] supervisor [is] liable for his deficient policies if…: (1) the existing policy or practice created an unreasonable risk of the constitutional injury he sustained;

(2) the supervisor was aware of the unreasonable risk that was created (or that it was so great and so obvious); (3) he was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Eichelman,* 510 F. Supp. 2d at 397.

48) The custom of prison guards using wanton and unnecessary force on prisoners is a clear risk of constitutional injury, the Warden should have been aware of the numerous incidents and reports, the Warden did not take action to address this risk, and the Mr. Barbacano was injured as a result of the ongoing practice of wanton and unnecessary violence perpetrated by the guards.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in his prayer for relief.

## Count III
## Assault and Battery

49) Plaintiff incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

50) By intentionally beating Mr. Barbacano, defendant committed assault and battery in violation of Pennsylvania common law.

51) Defendant's individual and repeated actions were extreme and outrageous causing great humiliation, embarrassment, severe emotional distress and suffering to Mr. Barbacano.

WHEREFORE plaintiff respectfully requests the damages outlined in the Prayer for Relief.

## COUNT IV

**Intentional Infliction of Emotional Distress**

52) Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this Complaint and incorporates them herein.

53) The conduct of defendant was extreme and outrageous.

54) The conduct described in the previous paragraphs was intentional or reckless.

55) The conduct described in the previous paragraph caused severe emotional distress to Mr. Barbacano for which he has sought counseling.

WHEREFORE, plaintiff prays for relief against defendants as hereinafter set forth in the prayer for relief.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

1. A ruling that Defendants' conduct was unconstitutional and against the laws of human dignity and the Fourth Amendment;

2. Nominal damages and compensatory damages from Defendants for their unlawful conduct;

3. Punitive damages against defendants in their individual capacities for the outrageous nature of their abuse and for the unconstitutional custom, policy and practice of abuse with the Lancaster County Prison;

4. Pursuant to 42 U.S.C. § 1988, an award to Plaintiff of reasonable attorney fees and costs;

5. An award to Plaintiff of such other and further relief as is just and proper.

                              Respectfully submitted,

                              **CLYMER & MUSSER, P.C.**

                              _s/*Leonard G. Brown, III* LGB6402_
                              LEONARD G. BROWN, III
                              Pennsylvania Bar No. 83207
                              408 West Chestnut Street
                              Lancaster, PA 17603
                              (717) 299-7101 (717) 299-5115—facsimile
Dated: October 22, 2008         ATTORNEY FOR PLAINTIFF